UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

KENNETH NOGLE,

        Plaintiff,

vs.

BEECH STREET CORPORATION,

        Defendant.

Case No.  2:10-cv-01092-KJD-GWF

**ORDER**

**Motion to Compel Discovery - #71**

      This matter is before the Court on Plaintiff's Motion to Compel Discovery (#71), filed on June 15, 2012; Defendant Beech Street's Opposition (#81), filed on July 13, 2012; Plaintiff's Reply (#95), filed on July 20, 2012; Defendant Beech Street's Sur-Reply in Opposition (#107), filed on July 26, 2012; and Plaintiff's Sur-Reply (#116), filed on August 1, 2012.  The Court conducted a hearing in this matter on August 6, 2012.

## BACKGROUND

      Plaintiff Kenneth Nogle alleges that he underwent an endoscopic procedure, which required the use of a syringe and anesthesia, at Endoscopy Center of Southern Nevada (hereinafter "Clinic") on November 15, 2006.  *Amended Complaint (#10)*, ¶¶53-54.  In early 2008, the Southern Nevada Health District, in conjunction with the Nevada State Bureau of Licensure and Certification and the Center for Disease Control and Investigation, began an investigation to determine if there was a common link to reported cases of Hepatitis C in Southern Nevada.  The investigation led to the discovery that the Clinic engaged in unsafe aseptic practices, including using syringes to re-enter Propofol vials, which exposed patients to blood borne pathogens in the blood of other patients.  ¶¶42-50.  The Southern Nevada Health District notified every patient who required anesthesia for a

procedure at the Clinic between March 1, 2004 and January 11, 2008, to undergo screening for blood born pathogens including Hepatitis C. Plaintiff underwent the recommended screening and was diagnosed with Hepatitis C. Plaintiff alleges that he contracted Hepatitis C as a result of his treatment at the Clinic on November 15, 2006. ¶¶56-60.

Plaintiff was a member of the Las Vegas Metropolitan Police Employee and Welfare Trust Plan (hereinafter "the LVMPD Trust" or "LVMPD Plan") which provides health care services to plan members through a network of contract health care providers. Plaintiff received treatment at the Clinic on November 15, 2006 through the LVMPD Plan's provider network. According to the amended complaint, Defendant Beech Street is a utilization review organization, managed care organization, and provider of insurance.[1] ¶11. Beech Street contracts with certain medical providers to provide medical services to members of plans to which Beech Street leases provider networks. ¶¶14-18. Plaintiff alleges that Beech Street was responsible for the provider network pursuant to which he received medical treatment at the Clinic on November 15, 2006.

Plaintiff alleges that there are express and implied terms in the contracts between Beech Street and the medical providers in its network which require the medical providers (1) to follow generally accepted clinical and medical practices; (2) to provide quality health care to the insured; and (3) to not engage in fraudulent or deceptive practices directed either at Beech Street or its insureds. ¶18. Plaintiff alleges that Beech Street has the right under the contract to direct, evaluate, audit, monitor, and supervise the quality of health care provided and to terminate the contract of any provider who engages in unsafe, fraudulent, deceptive or unreasonable business practices. ¶¶19-20. Plaintiff alleges that during the period from at least 2004 through February 2008, the Clinic regularly engaged in unsafe medical practices, including unsafe aseptic technique on multiple patients. ¶38. Plaintiff further alleges that the Clinic's unsafe practices would have been

---

[1] Fiserv Health Plan Administrators was named as the Defendant in the original complaint. Although Fiserv is also named as a Defendant in the First Amended Complaint(#10) filed on September 8, 2010, prior to the filing of that amended complaint, Plaintiff stipulated to the entry of an order dismissing Fiserv and naming Beech Street as a new defendant. *See Stipulation and Order to Dismiss Defendant Fiserv and to Amend Complaint (# 8, #9)*, filed on August 31, 2010. Beech Street filed its answer to the First Amended Complaint on November 8, 2010.

readily apparent to Beech Street upon reasonable investigation. This included the Clinic staff's practice of openly reusing single-use equipment and using syringes to re-enter Propofol vials in front of investigators, and openly describing the Clinic's practices when questioned.[2] ¶41.

Plaintiff's First Cause of Action against Beech Street is entitled "Negligence." Under this cause of action, Plaintiff alleges:

> Defendants owed a duty to Plaintiff to use reasonable care to investigate or monitor the medical practices at the clinic before directing Plaintiff to the clinic. In addition to the general duty concerning their relationship with the Clinic, Defendants violated NRS 695G.130, NRS 695G.160, NRS 695G.180, NRS 695G.190, NRS 695G.200, and NRS 683A.375.

*Amended Complaint (#10),* ¶62.

The First Cause of Action alleges that as a proximate and legal result of Defendants' negligence, Plaintiff has sustained special and general damages in excess of $10,000. ¶65. Plaintiff also alleges that:

> Defendants have acted with fraud, malice, and oppression. Plaintiff, therefore, seeks punitive damages by way of punishment and deterrence in an amount to be determined at trial.

*Id.* ¶67.[3]

The statutes referenced in paragraph 62 relate to the duties of managed care organizations. NRS 695G.050 defines a "managed care organization" as "any insurer or organization authorized pursuant to this title to conduct business in this State that provides or arranges for the provision of health care services through managed care." NRS 695G.040, in turn, defines "managed care" as:

> . . . a system for delivering health care services that encourages the efficient use of health care services by using employed or independently contracted providers of health care and by using various techniques which may include, without limitation:

---

[2] The reference to investigators appears to be to investigators for the Southern Nevada Health District who investigated the Clinic in 2008.

[3] Plaintiff's Second Cause of Action for "Breach of the Implied Covenant of Good faith and Fair Dealing/Bad Faith" was dismissed with prejudice by stipulation of the parties on June 15, 2012. *Order (#70).*

       1. Managing the health care services of an insured who has a serious, complicated, protracted or other health-related condition that requires the use of numerous providers of health care or other costly services;

       2. Providing utilization review;

       3. Offering financial incentives for the effective use of health care services; or

       4. Any combination of those techniques.

Beech Street has moved for partial summary judgment on the grounds that it is not a managed care organization within the meaning of NRS 695G.050. In support of its motion, Breech Street submitted a July 13, 2012 declaration by its general counsel Marcy Feller who states that Beech Street is neither an insurance company nor a health maintenance organization in the State of Nevada. *Defendant's Motion for Summary Judgment on Nevada's Managed Care Laws (#80), Exhibit 1, Feller Declaration.* Ms. Feller states that Beech Street is "a nationwide network-only preferred provider organization ("PPO") that facilitates the connection between with (sic) health care providers and health plan payors, such as insurance companies, HMOs, and self-insured health benefit plans, as well as their third administrators ("TPAs") (Beech Street's contracted clients)." *Id.* ¶4. Beech Street has also submitted a declaration by its corporate representative Iva Loomis who states that Beech Street was licensed by the Nevada Division of Insurance as "a utilization review agent" in 1991 and that it allowed its license to expire on March 1, 2007 because it began offering its utilization management products through a subcontractor. *Exhibit 3.*

Beech Street previously produced a copy of a "Payor Agreement" between itself and the Las Vegas Metropolitan Police Department Health and Welfare Trust which had an effective date of January 1, 2007 and was for a term of one year. Plaintiff argues that pursuant to this agreement Beech Street agreed to provide a network of contract medical providers for plan members which, together with other documentary evidence, supports Plaintiff's allegation that Beech Street was a managed care organization under NRS Chapter 695G.

Beech Street has so far been unable to locate and produce any written agreement between itself and the LVMPD Trust that was in effect in 2006 or prior years. Beech Street's Rule 30(b) deponent Kirk Fischer testified at his deposition taken on March 15, 2012 that he was not sure what

agreements existed before 2007. *Declaration in Support of Plaintiff's Reply to Motion to Compel, Exhibit L, Fischer Deposition, pg. 90.* Mr. Fischer indicated, however, that it stood to reason that some form of agreement existed, since Beech Street pre-approved Plaintiff Nogle's November 2006 endoscopic examination at the Clinic. Beech Street's counsel stated during the deposition that Beech Street's counsel had conducted a search for a 2006 payor agreement, but was not able to find one. *Id. pgs. 96-97.*

Beech Street's general counsel Marcy Feller subsequently stated in her July 13, 2012 declaration that "Benefit Planners, Inc. and its successor company, Fiserv Health Plan Administrators, Inc., which acts as a TPA [third party administrator] for employer sponsored health plans, has been a client of Beech Street since March 1, 2002. The Las Vegas Metropolitan Police Department Health and Welfare Plan ('Plan') a customer of the TPA, accessed the Beech Street network through Benefit Plans, Inc. and Fiserv Health Plan Administrators, Inc. until January of 2007." *Feller Declaration*, ¶¶7-8. It is unclear whether Ms. Feller's declaration is based on her review of documents or her personal recollection. In any event, Ms. Feller apparently indicates that prior to 2007 Beech Street contracted with Fiserv to provide a medical provider network for members of the LVMPD Plan. Her declaration does not indicate whether the contractual provisions and services that Beech Street provided to LVMPD Plan members through its agreement(s) with Fiserv were materially different from those it provided under the 2007 agreement with the LVMPD Trust.

Ms. Feller's declaration arguably conflicts with the September 20, 2010 affidavit of Denise M. Best of Fiserv Health Plan Administrators, Inc. which stated as follows:

> 6.   Benefit Planners, Ltd., d/b/a Fiserv Health Benefit Planners, Inc. entered into an Administrative Services Agreement with LVMPD Trust on January 1, 2006 to act as the third party administrator for the LVMPD Trust ("TPA Agreement"). This contract reflects the only contract in place between Fiserv and LVMPD Trust from 2006 through December 31, 2008. There are three amendments to the TPA Agreement that have been executed to date. . . .
>
> 7.   Fiserv does not have any other contracts with LVMPD Trust, or its contractual affiliates such as Beech Street Corporation ("Beech Street"), to perform any other functions on behalf of the LVMPD Trust for years 2004 through 2008. All of Fiserv's obligations to the

|   |   |
|---|---|
| 1 | LVMPD Trust from the inception of Fiserv's relationship with the |
| 2 | LVMPD Trust through the end of calendar year 2008 are outlined in the TPA Agreement and subsequent three amendments. |

*Declaration of Henry G. Jones (#110), Exhibit 12 ("Best Affidavit").*

Ms. Best further stated that Fiserv did not contract to provide nor was it otherwise responsible for providing the LVMPD Trust with a network of medical providers for the years 2004 through 2008; Fiserv was not responsible for quality assurance functions on behalf of the LVMPD Trust during this same time period; and Fiserv is not a corporate affiliate of Beech Street or any of Beech Street's corporate affiliates. *Id.* ¶¶8-10.

Plaintiff served numerous requests for production of documents on Defendant Beech Street. Although Beech Street produced documents to Plaintiff, it also objected to many of the requests on the grounds that they are irrelevant. Following unsuccessful efforts to resolve the discovery dispute through consultation with Defendant's counsel, Plaintiff filed the instant motion to compel on June 15, 2012. Plaintiff's motion sought an order requiring Beech Street to produce the following documents: (1) The Payor Agreement that was in effect in 2006 because it demonstrates that Beech Street was engaged in managed care; (2) The 2004-2006 provider directories because they demonstrate that Beech Street was engaged in managed care; (3) The 2006 Executive Summary and Medical Case Management report because it demonstrates that Beech Street was engaged in managed care; (4) Marketing and/or presentations in Nevada because it demonstrates that Beech Street engaged in managed care; and (5) Beech Street's financial records for 2010 and 2011 and any financial information available through 2012. *Motion to Compel Discovery (#71)*, pgs. 8-13. After Plaintiff filed his motion to compel, Beech Street produced documents responsive to items 2, 3 and 4 above. Plaintiff argues in its Reply Brief, however, that Beech Street should be sanctioned for only producing these documents after Plaintiff filed the motion to compel.

Although Beech Street had previously agreed to produce financial information, it changed its position after Plaintiff's second cause of action was dismissed. Beech Street argues that Plaintiff's First Cause of Action for negligence does not allege a claim upon which punitive or exemplary damages can be awarded and, therefore, information relating to Beech Street's financial condition is irrelevant. *Opposition to Motion to Compel (#81), pgs. 7-8.* Plaintiff argues, however,

that he has a viable claim for punitive or exemplary damages under his First Cause of Action and Beech Street should therefore be ordered to produce financial information relevant to establishing its net worth.

Beech Street has still not produced a payor agreement between itself and the LVMPD Trust or Fiserv that was in effect during 2006.  Beech Street states that it performed a diligent search of available "hard copy" files and electronically stored information ("ESI").  Because of corporate reorganizations and employee departures that have taken place in the last several years, however, much of the information relating to Beech Street's prior operations has been placed on backup tapes, retrieval from which is time-consuming and costly.  *Opposition to Motion to Compel (#81), pg. 8*.  In support of its assertion that it has made diligent efforts to preserve and search relevant records, Beech Street submitted the declaration of Marjorie G. Wilde, Associate Counsel of MultiPlan, Inc. which currently owns Beech Street.  *Opposition (#81), Exhibit 1, Wilde Declaration.*  Ms. Wilde states that after Beech Street was served with the amended complaint in September 2010, Beech Street's medical director and corporate employees most directly responsible for Beech Street's operations with respect to credentialing, quality management, network contracting and development, service operations and sales were notified of Plaintiff's allegations and the need to retrieve and preserve all potentially relevant documents in Beech Street's possession, custody and control.  *Id.* ¶6.  Ms. Wilde, with the assistance of corporate employees, gathered the potentially relevant records from existing Beech Street systems and files.  *Id.*  Storage boxes containing paper records were reviewed for relevant documents.  *Id.* ¶7.

Ms. Wilde further states that "[i]n connection with previous inquiries, Beech Street has attempted to restore employee email on tapes older than February 2007 and has determined that such email is contained on 500 unlabeled tapes, which tapes Beech Street has been unable to read and catalogue."  *Id.* ¶11.  With respect to emails existing on tapes from February 2007 forward, Ms. Wilde states that MultiPlan's IT Department was able to restore the Lotus Notes of certain listed current and former Beech Street employees for all emails from the earliest date existing on the tape until December 31, 2008.  All of the emails were reviewed for arguably responsive information and, to the extent not subject to objection, were provided to outside counsel for review and

production. *Id.* This review did not result in the discovery of a written payor agreement between Beech Street and the LVMPD Trust or between Beech Street and Fiserv for the year 2006. Ms. Wilde also states that she conducted a follow up meeting with current employees knowledgeable regarding Beech Street's relationship with the LVMPD Trust prior to the execution of the agreements effective January 2007 and confirmed that a thorough search of Beech Street's electronic and paper records had been conducted, but had not resulted in the discovery of a written payor agreement prior to 2007. *Id.* ¶12. Ms. Wilde lists the electronic and paper files that would have likely contained such information and which were searched by Beech Street. *Id.* ¶12, pgs. 10-12.

Plaintiff disputes Beech Street's representation that pre-February 2007 employee email stored on backup tapes cannot be restored and searched for relevant information. Plaintiff asserts that there are third party vendors who are capable of restoring and searching the pre-February 2007 backup tapes. Plaintiff also states that it is likely that the payor agreement or a copy of thereof will be found in an attachment or attachments to various pre-February 2007 emails and that once the email communications in backup tapes are restored into a searchable manner, search terms can be fashioned to locate references to payor agreements in the emails/attachments. Plaintiff also argues that Beech Street should bear the entire cost of restoring and searching the backup tapes as a sanction for its failure to produce responsive documents until after Plaintiff filed its motion to compel.

Defendant has submitted a supplemental declaration by Ms. Wilde in which she states that retrieving electronically stored information, that has been produced to date, took more than 900 man-hours and cost Beech Street more than $56,000 in labor and contractor costs. She estimates that the cost of restoring and searching the pre-February 2007 backup tapes, assuming it can be done, will be substantially higher and will require the employment of outside contractors. *Defendant's Sur-Reply in Opposition to Plaintiff's Motion to Compel (#105), Exhibit 2,* ¶2.

. . .

. . .

. . .

**DISCUSSION**

**1.    Plaintiff's Request that Defendant Be Required to Restore and Search Pre-February 2007 Emails Stored on Backup Tapes.**

Plaintiff seeks an order requiring Defendant Beech Street to restore its pre-February 2007 email communications, which are stored on backup tapes, into a usable-searchable format so that the same may be searched to find the 2006 agreement between Beech Street and the LVMPD Trust or between Beech Street and Fiserv on behalf of the LVMPD Trust. Plaintiff requests that Defendant be required to bear the costs of restoring and searching the emails.

Rule 26(b)(2)(B) of the Federal Rules of Civil Procedure states:

> A party need not provide discovery of electronically stored information from sources the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Rule 26(b)(2)(C)(iii) requires the court to limit the frequency or extent of discovery if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

The determination of whether good cause exists to order production of electronically stored information that is not reasonably accessible requires a balancing of the costs and potential benefits of the requested discovery under Rule 26(b)(2)(B). *Peskoff v. Faber*, 251 F.R.D. 59, 60 (D.D.C. 2008), citing *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, 247 F.R.D. 567, 571 (D.Minn. 2007). The 2006 Advisory Committee Notes identify the following factors that the court should consider in making the good cause determination:

> (1) the specificity of the discovery request; (2) the quantity of information available from other and more easily accessed sources; (3) the failure to produce relevant information that seems likely to have existed but is no longer available on more easily accessed sources; (4) the likelihood of finding relevant responsive information that cannot be obtained from other, more easily accessed sources; (5) predictions as to the importance and usefulness of the further

information; (6) the importance of the issues at stake in the litigation; and (7) the parties' resources.

In this case, the declarations of Defendant's counsel Ms. Wilde establishes that Beech Street has been unable to find the 2006 agreement through searches of its accessible electronic or paper files. The parties have also represented that they have not been able to obtain the agreement from other sources, such as the LVMPD Trust or Fiserv. The likelihood that the 2006 agreement will be found through a search of the pre-February 2007 emails is debatable, but it is not unreasonable to believe that such a search will result in its discovery.

Discovery of a 2006 written agreement between Beech Street and the LVMPD Trust, or between Beech Street and Fiserv on behalf of the LVMPD Trust, is important, although it may not be essential to the determination of this case. While there is conflict or uncertainty regarding the nature of Beech Street's contractual relationship regarding the LVMPD Trust in 2006 and prior years, there is no dispute that Beech Street was responsible for the provider network through which Plaintiff Nogle obtained treatment at the Clinic in November 2006. Although the actual written agreement between Beech Street and LVMPD Trust or Fiserv is the best evidence of Beech Street's contractual obligations, the Plaintiff may still be able to establish those obligations through other evidence. As to the importance of the issues at stake in this litigation, Plaintiff allegedly contracted Hepatitis C as a result of the Clinic's unsafe and improper medical practices. Although the Court has not been provided with an estimate of Plaintiff's alleged damages, it is reasonable to infer that Plaintiff will recover substantial compensatory damages if he prevails on his negligence claim against the Defendant. Thus, Plaintiff's interest in obtaining significant evidence relating to his negligence claim, such as Beech Street's contract to provide a provider network on behalf of the LVMPD Plan members, is substantial.

Under the Federal Rules of Civil Procedure, the presumption is that the responding party must bear the expense of complying with discovery requests. *Peskoff v. Faber*, 251 F.R.D. 59, 61 (D.D.C. 2008), citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). This presumption also operates in regard to discovery of electronically stored information. *Id.*, citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317 (S.D.N.Y. 2003). *See*

*also Adair v. EQT Production Co.*, 2012 WL 1965880, *3 (W.D.Va. 2012). The court has the discretion to shift all or part of the cost of producing electronically stored information to the requesting party in order to protect the responding party from undue burden or expense. *Id.* The court, however, should only consider shifting the cost of production to the requesting party when the requested information is not reasonably accessible and the responding party has not caused the information to become inaccessible after it was on notice that the information was relevant to pending or reasonably anticipated litigation. *Peskoff*, 251 F.R.D. at 61-62. Information stored on archival backup tapes is generally considered not reasonably accessible. *Laethem Equipment Co. v. Deere & Company*, 261 F.R.D. 127, 145 (E.D.Mich. 2009), citing *Zubulake v. UBS Warburg LLC*, 217 F.R.D. at 319-20 (describing the nature of backup tapes and how data is stored on them which makes restoration time consuming and expensive).

The Court has not been provided with a reasonable estimate by a qualified vendor regarding the cost for restoring the emails or other expenses that may be incurred in searching the emails once they are restored. Plaintiff and Defendant's counsel should further confer on this matter and provide reasonable estimates from a qualified third party vendor(s) for such services as well as any other expenses related to the proposed search. Until such information is provided, the Court is not in a position to either order the search to proceed or to shift all or a portion of that expense to Plaintiff.

Plaintiff argues that Defendant should be ordered to bear the costs of restoring and searching the pre-February 2007 emails as a sanction for failing to produce documents until after Plaintiff filed his motion to compel production. Generally, the sanction for failing to provide discovery until a motion to compel has been filed is to award the movant the expenses, including reasonable attorney's fees, he incurred in prosecuting the motion. *See* Fed.R.Civ.Pro. 37(a)(5)(A) and (C). Beech Street represents that it took reasonable steps to preserve relevant documents and information in accessible paper files or electronic storage devices after it was placed on notice of Plaintiff's lawsuit in late 2010. There is no evidence that Defendant's failure to provide other discovery to Plaintiff prior to the motion to compel has any bearing on the accessibility or cost of restoring and searching the pre-February 2007 emails. Consequently Plaintiff's request that

1  Defendant bear the cost of restoring and searching the emails as a sanction for its discovery
2  misconduct is denied.  The Court will further address the issue of possible cost shifting if and when
3  it is provided with competent estimates for the costs of restoring the pre-February 2007 emails into
4  a searchable format and the costs for conducting the search.

   **2.    Plaintiff's Motion to Compel Production of Information Regarding
          Defendant's Financial Condition for Purposes of its Punitive Damages Claim.**

7       Plaintiff requests that Defendant be ordered to produce its financial records from 2010 and
8  2011, and any financial information available through 2012.  *Motion to Compel (#71), pg. 13*.
9  Defendant opposes Plaintiff's request for production of its financial information on the grounds
10 that Plaintiff's complaint only alleges a claim for negligence upon which punitive damages are not
11 recoverable.
12      In *Cataldi v. Sirucsano*, 2012 WL 870222, *1 (D.Nev. 2012), this Court stated:

> "'A defendant's financial condition is relevant to the pursuit of
> punitive damages.'" *United States v. Autumn Ridge Condominium
> Assoc.,* 265 F.R.D. 323, 327 (N.D.Ind.2009), quoting *Platcher v.
> Health Professionals, Ltd.,* 2007 WL 2772855, at *2 (C.D.Ill.2007).
> Most courts do not require the plaintiff to make a prima facie
> showing of merit on its punitive damage claim before permitting
> discovery of a defendant's net worth. *Autumn Ridge,* 265 F.R.D. at
> 328.  "The countervailing approach, and the one chosen by the
> Supreme Court of Nevada, is that a plaintiff must first allege specific
> facts sufficient to support a claim for punitive damages." *Momot v.
> Mastro,* 2011 WL 18333349, *3 (D.Nev.2001) (citing *Hetter v.
> Eighth Judicial Dist. Court of State In and For County of Clark,* 110
> Nev. 513, 519, 874 P.2d 762, 766 (Nev.1994) (Nevada law allows for
> the discovery of income tax returns when related to the issue of
> punitive damages, so long as the requesting party has demonstrated
> some factual basis for the punitive damages claim).

22      The primary reason for permitting discovery of financial information without requiring the
23 plaintiff to demonstrate a prima facie case for an award of punitive damages is to avoid
24 unnecessary delay in discovery or trial that would otherwise occur if a plaintiff could only obtain
25 such discovery after first presenting a prima facie case for punitive damages.
26      In this case, Plaintiff's First Cause of Action alleges a claim against Defendant for
27 negligence, i.e. that Defendant breached the reasonable duty of care it owed to investigate and
28 monitor the medical practices at the Clinic before directing the Plaintiff to the Clinic.  *First*

1  *Amended Complaint (#10),* ¶ 62. Although paragraph 67 contains a "boilerplate" allegation that
2  Defendants have acted with fraud, malice and oppression entitling Plaintiff to an award of punitive
3  damages, the First Amended Complaint does not contain any factual allegations that support a
4  finding of fraud, malice or oppression.
5       In *Taylor v. Aria Resort & Casino, LLC*, 2012 WL 3065503, *3 (D.Nev. 2012), the
6  complaint alleged that plaintiffs contracted Legionellosis from defendant's hotel water system that
7  was contaminated with Legionella bacteria. In granting the defendants' motion to dismiss
8  plaintiff's claim for punitive damages, the court stated:

> Under Nevada law, a plaintiff is entitled to punitive damages after proving by clear and convincing evidence that the defendant has been guilty of expressed or implied oppression, fraud, or malice. *See* N.R.S. 42.005. "'Malice, express or implied' means conduct which is intended to injure a person or despicable conduct which is engaged in with a conscious disregard of the rights or safety of others." *See* N.R.S. 42.001. A claim for punitive damages requires evidence that the defendant acted with a culpable state of mind and that the conduct must exceed mere recklessness or gross negligence. *Countrywide Home Loans, Inc. v. Thitchener,* 124 Nev. 725, 743, 192 P.3d 243, 255 (2008).
>
> . . .
>
> Considering the allegations of fact in the light most favorable to the nonmoving party requires the Court to accept Plaintiffs' assertion that this is the second instance of Legionella in Aria's water system. Notwithstanding Plaintiffs' allegation, the complaint does not demonstrate Aria acted with a conscious disregard of the rights and safety of the Plaintiffs. The allegation in the Active proposed amended complaint does not sufficiently allege that Aria acted with a culpable state of mind. Accordingly, Aria's motion to dismiss is granted.

21      As Plaintiff points out, Defendant has not moved to dismiss the punitive damages claim in
22 the first cause of action. The Court is nevertheless reluctant to order Defendant to produce
23 financial information relevant only to a claim for punitive damages where, as here, the complaint
24 does not contain factual allegations of conduct or state of mind that would justify an award of
25 punitive damages. Under these circumstances, the Court agrees with the Nevada Supreme Court's
26 statement in *Hetter v. Eighth Judicial Dist. Court of State In and For County of Clark,* 110 Nev.
27 513, 519, 874 P.2d 762, 766 (Nev.1994) that Plaintiff is not entitled to obtain net worth discovery
28 where the complaint does not allege specific facts sufficient to support a claim for punitive

damages. The Court therefore denies Plaintiff's motion to compel discovery of documents or information relating to Defendant's financial condition.

### 3.  Plaintiff's Request for Sanctions.

Plaintiff requests that the Court sanction the Defendant for failing to produce relevant documents until after Plaintiff filed his motion for compel. As set forth in the preceding sections, the Court has deferred granting or denying Plaintiff's motion to compel pending further information regarding the pre-February 2007 emails stored on backup tapes and has denied Plaintiff's motion to compel production of financial information. The remainder of Plaintiff's motion to compel was rendered moot when Defendant produced responsive documents that it had previously objected to based on lack of relevancy. Rule 37(a)(5)(C) state that if a motion to compel is granted in part and denied in part, the court may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion. Given the Court's foregoing rulings, the Court will exercise its discretion and not make an award of fees and costs to either party under Rule 37(a)(5)(C).

## CONCLUSION

Based on the foregoing,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Discovery (#71) is **granted**, in part, and **denied**, in part as follows:

1. Plaintiff's motion to compel is granted in regard to the documents that Defendant produced following the filing of the motion to compel. Defendant's objections to the production of such documents on grounds of lack of relevancy are hereby overruled;

2. Plaintiff's motion to compel Defendant Beech Street to restore its pre-February 2007 email communications into a usable-searchable format so that the same may be searched is deferred pending the the parties' further conferring with each other and providing the Court with additional information as to the cost of restoring and searching the emails. The parties shall provide such information to the Court on or before September 10, 2012, unless the time is further extended by court order; and

. . .

3.   Plaintiff's motion to compel Defendant to produce its financial records from 2010 and 2011, and any financial information available through 2012, is denied.

DATED this 27th day of August, 2012.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge